**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF CONNECTICUT**

| | | |
|---|---|---|
| **TIFFANY L. HALO** | : | |
| | : | |
| **Plaintiff** | : | **CIVIL ACTION NO.:** |
| | : | **3:10 cv 01949 (VLB)** |
| **vs.** | : | |
| | : | |
| **YALE HEALTH PLAN** | : | |
| | : | |
| **Defendant** | : | **AUGUST 19, 2011** |

<u>**MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR JUDGMENT**</u>
<u>**ON THE ADMINISTRATIVE RECORD**</u>

**I.      FACTUAL BACKGROUND**

The plaintiff, Tiffany Halo, was a graduate student in the Department of Chemistry at Yale University in 2008 and enrolled in the Yale Health Plan.  The plaintiff's health care plan benefits are set forth in the Yale Health Plan Student Handbook. [1]

The plaintiff's medical records confirm that on Saturday, May 31, 2008, the plaintiff presented to Yale University Health Services Urgent Care Department

---

[1] A copy of the Yale Health Plan Student Handbook is attached as Exhibit A.

**DONAHUE, DURHAM & NOONAN, P.C.**
CONCEPT PARK   ●   741 BOSTON POST ROAD
GUILFORD, CONNECTICUT 06437
TEL:  (203) 458-9168 ● FAX: (203) 458-4424
JURIS NO. 415438

complaining of a visual disturbance of her left eye.[2]   She was referred the same day to Yale New Haven Hospital for an Eye Inpatient Consultation.  The plaintiff was diagnosed with a retinal detachment.  The plaintiff returned to the Yale Eye Center on   Sunday, June 1, 2008.  She was evaluated by a retinal specialist, Dr. Liggett of New England Retina Associates.   Dr. Liggett performed a vitrectomy (retinal attachment) that same day.  (See Exhibit B at pp. 1-7.)

The plaintiff returned for follow up care at the Yale Eye Center on June 2 and 9, 2008.  (See Exhibit B at pp. 8-12.)  The plaintiff was referred back to Dr. Liggett on Wednesday, June 11, 2008, and was diagnosed with a recurrent retinal detachment.   (See Exhibit B at p. 13.)   Consequently, a second vitrectomy was performed on Friday, June 13, 2008.  The plaintiff returned to New England Retina Associates for follow up examination on Saturday, June 14, 2008.  She reported having pain for one day post operatively, which had resolved, and blurry vision.  The plaintiff was instructed to return in two days, and was provided with a cell phone number to call if she had any problems over the weekend.  (See Exhibit B at pp. 15-16.)

The plaintiff returned to New England Retina Associates on Monday, June 16, 2008 complaining of severe pain in her left eye since 7:30 am.  As Dr. Liggett

_____

[2]  A copy of the plaintiff's medical records received by Yale Health Plan is attached as Exhibit B.

was out of the area due to a family emergency, the plaintiff was seen by Dr. Liggett's associate, Dr. Haffner.   Dr. Haffner examined the plaintiff and explained that her pain was due to gas which had come forward into the anterior chamber of the eye, causing the intra-ocular eye pressure to increase.   Dr. Haffner released the gas and applied a pressure patch.   The plaintiff was instructed to return in two days.   (See Exhibit B at pp. 16-19.)

From the time of the plaintiff's urgent visit on May 31, 2008 through her visit with Dr. Haffner on June 16, 2008, the plaintiff received medical treatment for her condition through the Yale Health Plan network, and all of her medical expenses were covered under her Plan.   (See defendant's Answer at ¶ 4.)

On June 16, 2008 and after the plaintiff's visit with Dr. Haffner, the plaintiff's mother called Yale Health Services and made a telephonic request for a referral to an out-of-network physician for a second opinion.   Within 24 hours, on Wednesday, June 17, 2008, Dr. Susan Forster, Chief of Ophthalmology at Yale University Health Services, called the plaintiff and approved the referral for a second opinion with Dr. Donald D'Amico of Weill Cornell Ophthalmology Associates.   The plaintiff's request, and the approval provided by Yale Health Plan, was for a second opinion only.   The

plaintiff was told that any additional services must be approved by the Yale Health Plan.[3]

The plaintiff obtained a second opinion from Dr. D'Amico on Tuesday, June 17, 2008.  At this visit the plaintiff informed Dr. D'Amico that she wished to "move to her parents place in New Jersey and would like to transfer her care to [Weill Cornell Medical Center]."  (See Exhibit B at p. 22.)   Dr. D'Amico examined the plaintiff, determined her retina had detached, and recommended further treatment.    (See Exhibit B at pp. 20-24.)  The plaintiff elected to undergo treatment by Dr. D'Amico that day, and she saw Dr. D'Amico for follow up on June 18, 2008, without obtaining prior authorization from the Yale Health Plan.  She returned again to Dr. D'Amico June 20, 2008 and June 26, 2008, again without prior authorization.  (See Exhibit B at pp. 25-34.)

---

[3] See Letter of approval for referral from Yale Health Plan to plaintiff dated June 17, 2008, attached as Exhibit C.  The plaintiff claims that her parents also had a telephone conversation with Vicki Eisler of Member Services at Yale Health Plan on this date, during which "they were told by Ms. Eisler that the circumstances were "emergency in nature" and that authorization for extended referral and coverage of benefits would be given for [the plaintiff's] care with Dr. D'Amico until June 30, 2008." (Emphasis added.) (See plaintiff's Complaint.)   However, as the letter of approval confirms, it was the referral for a second opinion which was valid until June 30, 2008.   Whether the plaintiff's situation was "emergent," as defined by the provisions of Plan, had yet to be determined

The plaintiff filed a claim for services rendered by Dr. D'Amico on June 17 and 18, 2008, which was received by the Claims Department on July 8, 2008.[4]   As the plaintiff failed to obtain authorization for out-of-network treatment, the Yale Health Plan initially declined coverage for the treatment rendered by Dr. D'Amico on June 17 and 18, 2008.[5]

The plaintiff returned to Dr. D'Amico for follow up care on Tuesday, August 5, 2008.  The plaintiff did not seek authorization for this visit.  On this date, Dr. D'Amico recommended further surgery to be performed eight days later, on Wednesday, August 13, 2008.  (See Exhibit B at pp. 35-38.)  At no time did the plaintiff obtain authorization for this surgery or file a claim.

_____

[4] See Health Insurance Claim Form dated June 26, 2008, attached as Exhibit D. The plaintiff never filed a claim for services rendered by Dr. D'Amico on June 20 and 26, 2008.

[5] See Explanation of Benefits dated July 30, 2008, attached as Exhibit E.

On Thursday, August 7, 2008 the plaintiff and her family wrote a letter to the Claim Administrator of Yale Health Plan.[6] [7]   In this letter the plaintiff's family appealed the decision to deny coverage for the treatment rendered by Dr. D'Amico on June 17 and 18, 2008.  The letter makes mention that the plaintiff had scheduled surgery to be performed by Dr. D'Amico on Wednesday, August 13, 2008.

Once Dr. Forster learned of the plaintiff's plan for surgery, she called the plaintiff on August 11, 2008.  The plaintiff stated she wanted to go forward with surgery as she wanted to be home post-op with her parents, and had a terrible experience with Dr. Liggett and New England Retina Associates.  Dr. Forster urged the plaintiff to see Dr. Ronald Alderman, a recognized retina specialist at the Yale Eye Center of the Yale Medical Group (and no affiliation with New England Retina Associates), who was well qualified to perform the surgery and in fact had worked with Dr. D'Amico.  Dr. Forster further advised the plaintiff **she needed to stay in network where equivalent care could be given in order to be covered under the Yale Health Plan**.  The plaintiff was unhappy with this, but stated she intended

---

[6] See Letter from Halo family dated August 7, 2008, attached as Exhibit F.

[7] On this date the plaintiff also wrote a letter of complaint to Richard Levin, President of Yale University.  Mr. Levin responded, stating his understanding that Yale Health Plan rejected the plaintiff's claim for medical coverage for out of network specialists, but her appeal would be discussed at an upcoming Claims Review Committee meeting.  See Letter from Halo family dated August 7, 2008, and Letter from Mr. Levin's dated August 14, 2008, attached as Exhibit G.

6

to go through with the surgery with Dr. D'Amico regardless of Yale Health Plan's denial of coverage.  Dr. Forster suggested to the plaintiff she present her case to the review board – to which the plaintiff replied that she would -   and offered to see the plaintiff at any time when she returned to New Haven.[8]

With full knowledge and understanding that Yale Health Plan would not cover the plaintiff's out of network charges, the plaintiff elected to proceed with a vitrectomy on August 13, 2008, which was performed by Dr. D'Amico at the New York Presbyterian Hospital.  (See Exhibit B at pp. 43 - 45.)[9]   At no time did the plaintiff file a claim for the charges associated with this surgery.

On Friday, August 15, 2008, Yale Health Plan wrote a letter to the plaintiff in response to her letter dated Thursday, August 7, 2008.[10]  This letter explains that the plaintiff's request for out of network consultation with Dr. D'Amico on June 17,

---

[8] See Phone Message Memorandum by Dr. Forster dated August 11, 2008 attached as Exhibit H, and defendant's Answer at ¶¶ 12 – 14.

[9] The plaintiff in fact registered herself as a "self-pay" patient at New York Presbyterian Hospital; she clearly understood that this surgery was not covered through the Yale Health Plan.  See Invoice dated September 29, 2008, attached as Exhibit I.

[10] See Letter from Yale Health Plan dated August 15, 2008, attached as Exhibit J.

2008 had been approved by Yale Health Plan, but the subsequent services rendered on June 17 and 18, 2008 and charges incurred were not covered.   The Yale Health Plan offered to attempt to negotiate a payment based upon usual and customary charges.  This letter also confirms that the decision to deny coverage for further surgery on August 13, 2008 and treatment with Dr. D'Amico was clearly articulated by Dr. Forster during her telephone call with the plaintiff on August 11, 2008.

By way of letters dated September 8, 2008 the plaintiff responded to the defendant's letter of August 15, 2008 and again requested reimbursement for Dr. D'Amico's bills.[11]

The Yale Health Plan Claims Committee met on September 9, 2008 to review the appeal.  The Committee voted to approve payment in full for the plaintiff's office visits on June 17 and 18, 2008, and uphold the denial of payment for surgery performed on August 13, 2008.[12]

By way of letter dated September 29, 2008 the plaintiff requested a second review of the Claims Committee's decision upholding the decision to deny payment

---

[11]  See Letters from Halo family dated September 8, 2008, attached as Exhibit K.

[12]  See Letter from Yale Health Plan dated September 18, 2008, attached as Exhibit L.

8

for surgery performed on August 13, 2008.[13]   The Claims Committee met on November 4, 2008 and voted unanimously to uphold the denial of payment for these services.[14]

In the interim, the plaintiff again developed left eye symptoms and returned to Weill Cornell Physicians on September 10, 2008.   She was diagnosed with a recurrent retinal detachment.  (See Exhibit B at pp. 46-48.)  Surgical revision was scheduled for a week later,   and performed by Dr. D'Amico at New York Presbyterian Hospital on September 17, 2008.  (See Exhibit B at p. 53.)[15]  At no time did the plaintiff request authorization from Yale Health Plan for out-of-network services prior to the treatment and surgery rendered in September 2008.   The plaintiff subsequently filed a claim for the charges associated with this treatment,

---

[13] See Letter from Mr. Harold Halo dated September 29, 2008, attached as Exhibit M.

[14] See Letter from Yale Health Plan dated November 6, 2008, attached as Exhibit N.

[15] The plaintiff again registered herself as a "self-pay" patient at New York Presbyterian Hospital.  See Invoice dated October 10, 2008, attached as Exhibit O.

which was received on October 3, 2008.[16] The plaintiff's claim was denied on November 11, 2008.[17]

As a degree-candidate student enrolled half-time or more, the plaintiff was automatically enrolled in Yale Health Plan. (See Exhibit A at p. 5.)  The plaintiff's plan included Hospitalization/Specialty Coverage.  (See Exhibit A at p. 52.)  This coverage covers approved outpatient specialty care, approved inpatient care at Yale Health Plan's approved facilities, and all approved emergency care received at any location at 100%. (See Exhibit B at p. 52.)  Excluded from coverage are inpatient hospitalization expenses for an elective admission incurred when a Yale Health Plan member is admitted to a hospital by a non-Yale Health Plan network physician. Services and follow up care of clinicians not in the network are also excluded unless approved in advance by the Yale Health Plan Care Coordination Department.  (See Exhibit A at p. 68.)

Under the Yale Health Plan, the plaintiff had Hospitalization/Specialty Coverage.  (See Exhibit A at p. 52.)  This coverage provides reimbursement for approved outpatient specialty care, approved inpatient care at Yale Health Plan's approved facilities, and all approved emergency care received at any location at

---

[16] See Health Insurance Claim Form dated September 25, 2008, attached as Exhibit P.

[17] See Explanation of Benefits dated November 11, 2008, attached as Exhibit Q.

100%.  (<u>See</u>  Exhibit  A  at  p.  52.)    Excluded  from  coverage  are  inpatient hospitalization expenses for an elective admission incurred when a Yale Health Plan member  is  admitted  to  a  hospital  by  a  non-Yale  Health  Plan  network  physician. Services and follow up care of clinicians not in the network is also excluded unless approved in advance by the Yale Health Plan Care Coordination Department.  (<u>See</u> Exhibit A at p. 68.)

  With respect to outpatient coverage outside Yale University Health Services, the Yale Health Plan states:  "If in the course of medical evaluation and treatment, a member requires outpatient services not provided at YUHS, the member's primary care clinician may make a referral to an approved specialist in the YHP health care network outside YUHS.  Prior authorization for coverage of these services must be obtained from the YHP Care Coordination Department.  A referral from your primary care  clinician  is  necessary  but  does  not  constitute  authorization  for  coverage. Authorization  for  coverage  must  be  obtained  from  the  Care  Coordination Department.  Approved claims are covered at 100%.  **Please note that YHP will not pay for the services of non-YHP network clinician unless those services, including all testing and treatment ordered by the non-network clinician, are authorized in advance by the YHP Care Coordination Department.  This is true even  if  the  member  was  referred  for  services  by  a  YHP  network  clinician, except in cases of emergencies**." (Emphasis added.)  (<u>See</u> Exhibit A at p. 59.)

With respect to out-of-network outpatient coverage, the Yale Health Plan provides in pertinent part: "[O]utpatient care received out of the YHP network of health care clinicians and facilities is not covered under YHP Hospitalization/Specialty Coverage.  The two exceptions to this are outpatient care received for an emergency or urgent condition (see the section Emergency Care Coverage for a full explanation) and care that has been arranged in advance by a YHP clinician and approved in advance by the Care Coordination Department." (See Exhibit A at p. 61.)  "An emergency condition is defined as a major acute medical problem or major acute trauma that requires immediate medical attention or a condition that could lead to serious harm or death if care is not received or is delayed."  (See Exhibit A at p. 62.)  "An urgent condition is defined as the sudden and unexpected onset of an acute medical problem or trauma that requires immediate medical attention." (See Exhibit A at p. 63.)  "**If, in the judgment of YHP, the illness or injury does not meet the plan definition of an emergency or urgent condition, coverage will be denied.**"  (Emphasis in original.)  (See Exhibit A at p. 63.)

The Plan defines an "elective admission" as "[a]n inpatient admission that is medically necessary and scheduled in advance for a condition for which the member does not require immediate medical attention."  (See Exhibit A at p. 86.)  "[I]npatient hospitalization expenses for an elective admission incurred when a YHP member is

admitted to a hospital by a non-YHP network physician" is excluded from coverage. (See Exhibit A at p. 68.)

The Plan further provides that "YHP may adopt reasonable policies, procedures, rules and interpretations to promote the orderly and efficient administration of the policies and coverage plans described in the student handbook." (See Exhibit A at p. 76.)

The plaintiff filed suit with this Court on December 13, 2010, claiming violation of the Employee Retirement Income Security Act, 29 U.S.C.A. § 1132 and the Code of Federal Regulations, 29 C.F.R. § 2560.530-1. More particularly, the plaintiff claims Yale Health Plan violated these statutes in that it "did not make decisions regarding participant, Tiffany Halo's urgent care within 72 hours nor resolve non-urgent care within 15 days nor [sic] provide adequate notice in writing within the decision making time frames as required by ERISA and 29 [sic] C.F.R. Part 2560 Sec. 2560.503.1." The plaintiff claims as a result she was unlawfully denied benefits in the total amount of $47,513.00.[18]

## II.    STANDARD OF REVIEW

Summary judgment provides an appropriate mechanism for a court to consider a challenge to the termination of disability benefits under ERISA. See, e.g., Suarato v. Bldg. Servs. 32BJ Pension Fund, 554 F.Supp.2d 399, 414-15

---

[18] Of this amount, the charges of $4,100.00 claimed by the plaintiff for services rendered by Dr. D'Amico on June 17 and 18, 2008 was in fact approved by Yale Health Plan on appeal, and has been paid. (See Exhibits H and I.)

(S.D.N.Y.2008) (collecting cases).  See also,  Gannon v. Aetna Life Ins. Co., No. 05 Civ. 2160, 2007 WL 2844869, at *6 (S.D.N.Y. Sept. 28, 2007) (noting that "summary judgment provides an appropriate vehicle whereby the Court can apply substantive ERISA law to the administrative record"). In such an action "the contours guiding the court's disposition of the summary judgment motion are necessarily shaped through the application of the substantive law of ERISA." Ludwig v. NYNEX Service Co., 838 F.Supp. 769, 780 (S.D.N.Y.1993).

As in any context, summary judgment is appropriate where "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). The party moving for summary judgment bears the "burden of showing that no genuine issue of material fact exists and that the undisputed facts entitle it to judgment as a matter of law." Rule v. Brine, Inc., 85 F.3d 1002, 1011 (2d Cir.1996). However, when moving against a party who will bear the ultimate burden of proof on an issue, "the movant's burden will be satisfied if he can point to an absence of evidence to support an essential element of the nonmoving party's claim."  Goenaga v. March of Dimes Birth Defects Found., 51 F.3d 14, 18 (2d Cir.1995); See also, Celotex Corp. v. Catrett, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986) (noting that a "moving party is entitled to judgment as a matter of law [if] the nonmoving party has failed to make a sufficient showing on an essential element of her case with respect to which she has the

burden of proof") (internal quotation marks omitted).

Once the moving party has satisfied its burden, the burden then shifts to the nonmoving party to come forward with affidavits, depositions, interrogatories or other sworn evidence sufficient to create a genuine issue of material fact for trial. See Fed.R.Civ.P. 56(e)(2); See also, Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586-87, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). The nonmoving party may not satisfy this burden simply by "show[ing] that there is some metaphysical doubt as to the material facts."  Matsushita, 475 U.S. at 586; see also Trans Sport, Inc. v. Starter Sportswear, Inc., 964 F.2d 186, 188 (2d Cir.1992) (holding that a non-movant cannot defeat a motion for summary judgment "merely ... on the basis of conjecture or surmise"), quoting,  Bryant v. Maffucci, 923 F.2d 979, 982 (2d Cir.1991) (internal quotation marks omitted). Rather, the non-movant must advance "enough evidence to support a jury verdict in its favor." Trans Sport, Inc., 964 F.2d at 188. "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.' " Matsushita, 475 U.S. at 587 (quotation omitted).

Although it is sometimes appropriate to treat a motion for entry of judgment on the administrative record as a motion for summary judgment pursuant to Fed.R.Civ. 56, such motions "can best be understood as essentially a bench trial 'on the papers' with the District Court acting as the finder of fact." Muller v. First Unum Life Ins. Co., 341 F.3d 119, 124 (2d Cir. 2003).  Ordinarily when reviewing an ERISA

plan eligibility determination, "the district court is limited to a review of the evidence in the administrative record absent good cause to consider additional evidence." Connors v. Conn. Gen. Life Ins. Co., 272 F.3d 127, 134-35 (2d Cir. 2001).

ERISA plans are construed according to federal common law. Masella v. Blue Cross & Blue Shield of Conn., Inc., 936 F.2d 98, 107 (2d Cir.1991). The plan should be reviewed as a whole, giving terms their plain meanings. See, e.g., Brass v. Am. Film Techs., Inc., 987 F.2d 142, 148 (2d Cir.1993) ("Where the [contract] language is plain and unambiguous, a court may construe the contract and grant summary judgment."); Bradwell v. GAF Corp., 954 F.2d 798, 800 (2d Cir.1992) ("In construing the policy, we look to the language of the policy and other indicia of the intent of the policy's creator.").

"ERISA does not set out the applicable standard of review for actions challenging benefit eligibility determinations." Zuckerbrod v. Phoenix Mut. Life. Ins. Co., 78 F.3d 46, 49 (2d Cir. 1996). The Supreme Court has held, however, that "a denial of benefits challenged under [ERISA] is to be reviewed under a *de novo* standard unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan." Firestone Tire & Rubber Co. v. Bruch, 489 U.S. 101, 115, 109 S.Ct. 948, 103 L.Ed.2d 80 (1989). The Second Circuit has explained that "[a] reservation of discretion need not actually use the words 'discretion' or 'deference' to be effective, but it must be clear." Nichols v. Prudential Ins. Co. of America, 406 F.3d 98, 108

(2d. Cir. 2005).  "Examples of such clear language include authorization to 'resolve all disputes and ambiguities,' or make benefits determination 'in our judgment.'  In general, language that establishes an objective standard does not reserve discretion, while language that establishes a subjective standard does."  Id.  If the insurer establishes that it has such discretion, the benefits decision is reviewed under the "arbitrary and capricious" standard.  Fay v. Oxford Health Plan, 287 F.3d 96, 104 (2d Cir. 2002).

The Second Circuit recently provided further clarification as to the type of language in a benefit plan that "conveys sufficient discretion to an administrator to require courts' 'arbitrary and capricious' rather than de novo review of its actions." Krauss v. Oxford Health Plans, Inc., 517 F.3d 614, 622-23 (2d Cir.2008). In Krauss, the defendant insurer had denied the plaintiff full reimbursement of a bilateral breast reconstruction surgery and private-duty nursing care.  The Court held that two phrases in the documents of the plan under consideration were adequate to convey such discretion.  The first stated that the plan "'may adopt reasonable policies, procedures, rules, and interpretations' to promote the orderly and efficient administration of" the plan's Supplemental Certificate of Coverage. Id. at 622-23. The second, which appeared in the section of the plan document describing the plan's standard for determining reimbursement rates, defined a "usual, customary, and reasonable" ("UCR") fee as either " '[t]he amount charged or the amount We determine to be the reasonable charge, whichever is less.' " Id.  The Court found

17

that the use of the verb "determine" conferred upon the plan "discretionary authority regarding one of the Plan terms here at issue: UCR charges."  Id. at 623-24.

Similarly, in the instant case, the Yale Health Plan clearly confers discretionary authority upon the plan administrator to "adopt reasonable policies, procedures, rules, and interpretation to promote the orderly and efficient administration of the policies and cooperage plans" set for in the student handbook. (See Exhibit A at p. 76.)  The plan further provides that **"[i]f, in the judgment of YHP, the illness or injury does not meet the plan definition of an emergency or urgent condition, coverage will be denied."**  (Emphasis in original.) (See Exhibit A at p. 63.)  As the Yale Health Plan clearly grants the plan fiduciary such discretionary authority, this Court is required to limit its review of a denial of benefits to the administrative record, and determine whether the denial was "arbitrary and capricious."

"Where such discretionary authority is reserved, denials may be overturned as arbitrary and capricious only if the decision is 'without reason, unsupported by substantial evidence or erroneous as a matter of law.'"  (Internal citations omitted.) Fay, 287 F.3d at 104.  "Substantial evidence … is such evidence that a reasonable mind might accept as adequate to support the conclusion reached by the decisionmaker and requires more than a scintilla but less than a preponderance." (Internal quotation marks and citations omitted.)  Krauss, 517 F.3d at 624.

## III.   ARGUMENT

### A.   Yale Health Plan's Decision to Deny the Plaintiff's Benefits was not Arbitrary or Capricious, nor did it Violate Federal Law.

The plaintiff claims the defendant's decisions to deny benefits violated the Federal Rules because they were not made within 72 hours as required for urgent care matters, or within 15 days as required for non-urgent care matters.  The plaintiff further claims the defendant did not provide adequate notice in writing within the time frames required by law.  The plaintiff's claims are without merit.

Under § 502(a)(1)(B), a beneficiary may bring a civil action "to recover benefits due to [her] under the terms of [her] plan, to enforce [her] rights under the terms of the plan, or to clarify [her] rights to future benefits under the terms of the plan." 29 U.S.C. § 1132(a)(1)(B). To recover benefits under § 502(a)(1)(B), the employee must establish that he or she "has satisfied the conditions necessary for benefits under the plan." Tolle v. Carroll Touch, Inc., 977 F.2d 1129, 1133 (1992), affirmed, 23 F.3d 174 (1994).

In accordance with the provisions of ERISA, the Code of Federal Regulations sets forth the requirements for employee benefit plan procedures pertaining to claims for benefits by participants and beneficiaries. 29 C.F.R. § 2560.503-1. Although the applicable regulations are specific in pronouncing the requirements, strict compliance is not mandated. Wolfe v. J.C. Penney Co., 710 F.2d 388, 393 (7th Cir.1983). Rather, substantial compliance with the regulations is sufficient. Id.

The requirements for timing and notification of benefit determination applicable to the instant case are set forth in § 2560.503-1(f)(2).  "In the case of a pre-service claim, the plan administrator shall notify the claimant of the plan's benefit determination (whether adverse or not) within a reasonable period of time appropriate to the medical circumstances, but not later than 15 days after receipt of the claim by the plan."  § 2560.503-1(f)(2)(iii)(A).  "In the case of a post-service claim, the plan administrator shall notify the claimant … of the plan's adverse benefit determination within a reasonable period of time, but not later than 30 days after receipt of the claim."  § 2560.503-1(f) (2)(iii)(B).

In the present case, the plaintiff's mother made a telephonic request for an out of network referral for a second opinion regarding her daughter's care on June 16, 2008.  Within 24 hours, Dr. Forster responded to this call and approved the referral, for second opinion only, and informed the plaintiff any additional services must be approved by the Yale Health Plan.  The plaintiff consulted with her out of network provider on June 17, 2008, decided to transfer her care to that provider, and proceeded to treat with that provider on June 17, 2008 and June 18, 2008 without seeking prior approval from Yale Health Plan.  Subsequently, the plaintiff filed a post-service claim which was received by the Claims Department on July 8, 2008.  Within 30 days, on July 30, 2008, the Yale Health Plan rejected the claim on

the basis that the service was not authorized.   Clearly, the time notifications as outlined in § 2560.503-1(f)(2)(iii)(B) were met by the defendant.[19]   Regardless, the Yale Health Plan ultimately approved coverage for these charges on appeal.   As that claim has been resolved among the parties, it is moot, and need not be considered by this Court.

With respect to the charges incurred by the plaintiff on June 20, 2008 and June 26, 2008, the plaintiff never requested authorization prior to treatment, nor did she file a claim with Yale Health Plan for the services provided by her out-of-network provider. As no claim was filed, the plaintiff has failed to satisfy the necessary conditions for her benefits under her Plan, and the notification requirements of the CFR are inapplicable.   Consequently, the plaintiff's request for reimbursement of these charges in this case should be denied by this Court.

---

[19] The plaintiff's reliance on § 2560.503-1(f)(2)(i) is misplaced.  The CFR defines a "claim of urgent care" as "any claim for medical care or treatment with respect to which the application of the time periods fro making non-urgent care determinations (A) Could seriously jeopardize the life or health of the claimant or the ability of the claimant to regain maximum function, or (B) In the opinion of a physician with knowledge of the claimant's medical condition, would subject the claimant to severe pain that cannot be adequately managed without the care or treatment that is the subject of the claim."  § 2560.503-1(m)(1)(i).  Whether a claim is urgent within the meaning of the Code is determined by an "individual acting on behalf of the plan applying the judgment of a prudent layperson" or "a physician with knowledge of the claimant's medical condition."  § 2560.503-1(m)(ii - iii).  In the instant case, the defendant did not determine initially that the plaintiff's claim was urgent, nor was the defendant advised by Dr. D'Amico that the plaintiff required "urgent care."  More fundamentally, the request for payment of the claim was made <u>after</u> the medical care was rendered; it could not have been "urgent" at that point.

The plaintiff also failed to request authorization prior to treatment and file a claim with the Yale Health Plan for services provided by her out-of-network provider on August 5, 2008.  Nor did she file a claim with Yale Health Plan for the surgery performed by that provider on August 13, 2008.  Again, the plaintiff did not satisfy the conditions necessary for benefits and the notification requirements of the CFR are again inapplicable.  Consequently, the plaintiff's request for reimbursement of these charges in this case should be denied by this Court.

Even if the time notification requirements were to apply to the plaintiff's request for coverage for her out of network treatment and surgery on August 13, 2008 – which the defendant does not concede – the defendant met the time and notification requirements of the CFR.  By way of letter dated August 7, 2008 the plaintiff made mention of her intent to undergo surgery with her out of network provider on August 13, 2008.  Dr. Forster received this information and called the plaintiff within four days on August 11, 2008.  During this call  Dr. Forster clearly articulated to the plaintiff that she needed to remain in network where equivalent care could be provided in order to be covered by under the Yale Health Plan for this surgery, as well as for any further care.  Dr. Forster offered the plaintiff a qualified, alternative in-network retinal specialist if she preferred not to return to her prior treating physicians.  Nonetheless, the plaintiff elected to proceed with out of network surgery and treatment.  On August 15, 2008 the Claims Administrator of the Yale Health Plan wrote a letter to the plaintiff confirming that her coverage was denied on

the basis that non-emergent out of network care is not a part of the plaintiff's health care benefit with Yale Health Plan.  Thus, even if one were to characterize the August 7, 2008 letter as a "pre-service claim," and even further assuming that the Yale Health Plan Claims Administrator received this "claim" on that date, the plaintiff was informed orally by Dr. Forster and in writing by her claims administrator of her Plan's benefit determination well within 15 days of "receipt" of the "claim."

§ 2560.503-1(f)(2)(iii)(A).  Further, the letter clearly provided adequate notice to the plaintiff, setting forth the "reason for denial, written in a manner calculated to be understood by the participant" as required by ERISA.  29 U.S.C.A. § 1133(1).

The plaintiff contends that because she did not receive the defendant's letter until after her surgery, notice was untimely.  This argument is disingenuous.  Dr. Forster clearly conveyed to the plaintiff in the telephone conversation on August 11, 2008 that all charges for out-of network services would not be covered by the Yale Health Plan and explained why. The plaintiff stated she intended to appeal this decision. The plaintiff registered herself as a self pay patient at New York Presbyterian Hospital on August 13, 2008l.  She certainly had notice on August 11, 2008 that her claim would be denied.

The plaintiff contends her surgery on August 13, 2008 was emergent.  This contention is unsupported by the uncontested facts.   The surgery was recommended on August 5, 2008, eight days earlier.  Dr. D'Amico's record of the August 5, 2008 visit states that the plaintiff is to "[r]eturn in about 7 days (around

8/12/2008)" for surgery.  (See Exhibit B at p. 38.)  There is nothing in the record to suggest that surgery was emergent or urgent.  Similarly, there is nothing in the plaintiff's letters to Yale Health Plan or Yale University which suggests that this surgery was emergent or urgent. (See Exhibits F, G and K.)   The plaintiff's August 13, 2008 surgery falls squarely within the definition of an "elective admission."  As such, it was not covered by her Plan.   Accordingly, the plaintiff's request for reimbursement of these charges in this case should be denied by this Court.

With respect to the plaintiff's claim for benefits for her surgery of September 17, 2008, the plaintiff again failed to obtain authorization for out-of-network services as required by her Plan.  The plaintiff offers no explanation as to the reason for her failure to request authorization.[20]  She again registered herself as a "self-pay" patient.  The plaintiff filed a post-service claim, which was denied because the out-of-network services were not authorized.   Therefore, the plaintiff's request for reimbursement of these charges in this case should be denied by this Court.

Fay v. Oxford Health Plan, 287 F.3d 96 (2 Cir. 2002) is illustrative. In Fay, the plaintiff's husband received coverage for 24 hour private nursing care at his home, from 1992–1995, by way of an ERISA plan offered by the plaintiff's employer

---

[20] It would be reasonable to conclude that the plaintiff did not seek authorization because she already understood from her conversation with Dr. Forster and the denial of coverage for her August 13, 2008 surgery that this surgery would not be covered by her Plan.

through Aetna.   In 1996, the plaintiff's employer chose to offer its health care benefits through Oxford Health Plans.  Oxford warned the plaintiff that it would not extend extra- contractual benefits into 1997 and suggested she pursue other coverage and funding options.  Oxford sent the plaintiff a notification letter and a list of agencies from which the plaintiff might seek additional funds.  In 1998 Oxford denied the plaintiff's request for home care benefits, claiming such coverage was neither covered by the plan nor "medically necessary."  Id. at 101-102.

The plaintiff and her husband filed suit against Oxford to recover plan benefits pursuant to ERISA.   The District Court granted Oxford's motion for summary judgment on the basis that the plaintiff had failed to exhaust administrative remedies.   Thereafter the plaintiff exhausted grievance procedures as outlined by the plan.  The first level appeal was denied on the grounds that private duty nursing was not a covered benefit under the policy, was not "medically necessary" as determined by the plan's Medical Director, and not the most appropriate "level of service" as defined by the plan.  This decision was upheld by the grievance review board and again by the grievance committee, finding that the "home care" benefit was appropriate for part time nursing care only and not 24 hour care, and no determination had been made by the Medical Director that such services were medically necessary.  Id. at 102.

The District Court thereafter restored the action to its docket.  The parties filed cross-motions for summary judgment.   The court granted the defendant's

motion, finding that Oxford's plan did not afford unlimited 24 hour private duty nursing at home, and even if the plan could be construed to provide such coverage, the plan gave the Medical Director discretion to make that decision.   As the Director's decision was not arbitrary and capricious, the plaintiffs claim was dismissed.  Id. at 103.[21]

On appeal, the Federal Court of Appeals upheld the District Court's findings. The court rejected the plaintiffs argument that full time private duty nursing care was guaranteed under the provisions of their plan.  Rather, the relevant provisions of the plan, read together, demonstrate that the services the plaintiffs desired were specifically excluded.   Id. at 104-106.   The court further held that the Oxford's decision that the care requested by the plaintiffs was not "medically necessary" was not "without reason, unsupported by substantial evidence or erroneous as a matter of law." (Internal citations omitted.) Id. at 106.   "Although the Fays understandably prefer in-home care, Oxford's conclusion that such care was not Medically Necessary so as to fit within the apparent exception to the Plan's exclusion of private duty nursing was neither arbitrary nor capricious."  Id. at 108.

The Fay decision stands on all fours with the case at bar.  The plaintiff's claim was reviewed in detail by the Yale Health Plan Medical Director, Dr. Michael Rigsby, and Dr. Susan Forster, Chief of Ophthalmology.   The review included information

---

[21] The court noted that even under the de novo standard of review, the plaintiff's claim would fail.  Id.

and documentation obtained by Care Coordination and Member Service, as well as the plaintiff's in network providers.  Based upon the records, the facts and the Plan, the reviewers concluded that the plaintiff's claims for out of network medical care, which had not been authorized in advance by the Care Coordination Department as required by the Yale Health Plan, and should be denied.  The Plan specifically excludes out of network care from coverage.  There is absolutely no evidence to suggest that the decision to deny out-of-network benefits was arbitrary or capricious.

The plaintiff's claims also do not fall within the definition of claims for "emergency care" or "urgent care" as defined by the Plan.  The medical records support these conclusions.  Alternative in-network retinal specialists were made available to the plaintiff who were imminently qualified and more than capable of providing the treatment and care the plaintiff needed.  Based upon all the above, the defendant's decision to deny coverage cannot be deemed arbitrary or capricious, without reason, unsupported by substantial evidence or erroneous as a matter of law.  Consequently, judgment should enter in favor of the defendant.

IV.    CONCLUSION

For all the foregoing reasons, the defendant requests this Court to grant its motion for judgment.

THE DEFENDANT,
YALE HEALTH PLAN

By:_____/s/_____
         Patrick M. Noonan (#ct00189)
         Donahue, Durham & Noonan, P.C.
         741 Boston Post Road, Suite 306
         Guilford, CT  06437
         (203) 458-9168

**CERTIFICATION**

I hereby certify that, on the above-written date, a copy of the foregoing Motion for Judgment on the Administrative Record was filed electronically and served by mail on:

Tiffany L. Halo
79 Henning Terrace
Denville, NJ  07834

_____/s/_____
         Patrick M. Noonan