14-4055
Halo v. Yale Health Plan

# UNITED STATES COURT OF APPEALS

## FOR THE SECOND CIRCUIT

————————

August Term, 2015

(Argued: September 11, 2015      Decided: April 12, 2016)

Docket No. 14-4055

————————

TIFFANY L. HALO,

*Plaintiff-Appellant,*

—v.—

YALE HEALTH PLAN, DIRECTOR OF BENEFITS & RECORDS YALE UNIVERSITY,

*Defendant-Appellee.*

————————

B e f o r e :

KATZMANN, *Chief Judge,* LYNCH, *Circuit Judge,* and ARTERTON, *District Judge.*[*]

————————

Sections 503 and 505 of the Employee Retirement Income Security Act of 1974, 29 U.S.C. §§ 1133, 1135, authorize the Department of Labor to issue

———————————

[*] The Honorable Janet Bond Arterton, of the United States District Court for the District of Connecticut, sitting by designation.

regulations governing claims procedures for employee benefit plans. The United States District Court for the District of Connecticut (Bryant, *J.*) held that, when exercising discretionary authority to deny a claim for benefits, a plan's failure to comply with the Department's claims-procedure regulation entitles a participant or beneficiary to *de novo* review of her claim for benefits in federal court, unless the plan substantially complied with the regulation, in which case an arbitrary and capricious standard of review applies. The district court also held that claimants are entitled to unspecified civil penalties if the plan fails to comply with the regulation. Because we conclude that these two holdings upset the Department of Labor's regulatory framework, we VACATE and REMAND.

————————

TIFFANY L. HALO, *pro se*, Denville, New Jersey.

PATRICK MATTHEW NOONAN (Anthony Dexter Sutton, *on the brief*), Donahue, Durham & Noonan, P.C., Guilford, Connecticut, *for Defendant-Appellee*.

————————

KATZMANN, *Chief Judge*:

Under Sections 503 and 505 of the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §§ 1133, 1135, Congress empowered the Department of Labor to issue rules and regulations governing claims procedures for employee benefit plans. This case calls upon us to interpret an agency regulation in the context of the regulation's purpose, as well as the purpose of the regulation's authorizing statute, as we address some of the consequences that

follow from a plan's failure to comply with the Department's claims-procedure regulation, 29 C.F.R. § 2560.503-1.

The United States District Court for the District of Connecticut (Bryant, *J.*) held that, when exercising discretionary authority to deny a claim for benefits, a plan's failure to establish or follow reasonable claims procedures in accordance with the regulation entitles the claimant to *de novo* review of the claim in federal court, unless the plan "substantially complied" with the regulation, in which case an arbitrary and capricious standard applies to the federal court's review of the claim. The district court further held that a plan's failure to follow the Department's regulation results in unspecified civil penalties.

We respectfully disagree with the district court's holdings in light of the careful balance struck by the Department's regulation. Specifically, we hold that, when denying a claim for benefits, a plan's failure to comply with the Department of Labor's claims-procedure regulation, 29 C.F.R. § 2560.503-1, will result in that claim being reviewed *de novo* in federal court, unless the plan has otherwise established procedures in full conformity with the regulation and can show that its failure to comply with the regulation in the processing of a particular claim

was inadvertent *and* harmless. We further hold that civil penalties are not available to a participant or beneficiary for a plan's failure to comply with the claims-procedure regulation. Finally, we hold that a plan's failure to comply with the claims-procedure regulation may, in the district court's discretion, constitute good cause warranting the introduction of additional evidence outside the administrative record. Accordingly, we VACATE and REMAND for further proceedings consistent with this opinion.

## Factual Background and Procedural History

A full discussion of the factual background of this case is set forth in the district court's memorandum of decision. *See Halo v. Yale Health Plan* (Halo II), 49 F. Supp. 3d 240, 244–53 (D. Conn. 2014). Because the district court's conclusions were premised on the incorrect standard ("substantial compliance"), the district court did not make factual findings that would permit us to assess whether Defendant-Appellee Yale Health Plan, Director of Benefits & Records Yale University ("Yale Health Plan") established procedures in full conformity with the regulation but inadvertently and harmlessly failed to comply with it in the processing of a particular claim. We therefore do not delve deeply into the

4

specific facts of this case, because we leave it to the district court to apply the correct standard in the first instance on remand. We summarize the factual background and procedural history merely to provide context for the legal discussion to follow.

Plaintiff-Appellant Tiffany L. Halo was a student at Yale University and an insured under the Yale Health Plan. When Halo began experiencing serious problems with her left eye in 2008, she visited and underwent surgery with doctors within the Yale Health Plan network. Dissatisfied with the results of her treatment, she returned to her parents' home, where she eventually underwent further surgery with doctors who were not in the Plan's network and whose treatment therefore was covered only if the condition treated constituted an emergency or urgent condition or if the treatment was approved in advance by the Plan's Care Coordination Department.

Yale Health Plan rejected Halo's claims for coverage. Appearing *pro se*, Halo filed a civil action against Yale Health Plan alleging, among other things, that it violated the Department of Labor's claims-procedure regulation when it denied a number of her claims for benefits. Halo contests both the timing and

content of the explanations concerning Yale Health Plan's denials. For example,

the Department of Labor's regulations require that notification of an adverse

benefit determination "shall set forth, in a manner calculated to be understood by

the claimant" a number of specific pieces of information, including: (1) "The

specific reason or reasons for the adverse determination;" (2) "[r]eference to the

specific plan provisions on which the determination is based;" (3) "[a] description

of any additional material or information necessary for the claimant to perfect the

claim and an explanation of why such material or information is necessary;" and

(4) "[a] description of the plan's review procedures and the time limits applicable

to such procedures, including a statement of the claimant's right to bring a civil

action under section 502(a) of the Act following an adverse benefit determination

on review." 29 C.F.R. §§ 2560.503-1(g)(i)–(iv). Yet, in at least one notification, the

only explanation Yale Health Plan provided to Halo was "SERVICE NOT

AUTHORIZED." App. 160.

On August 19, 2011, Yale Health Plan filed a "motion for judgment on the

administrative record." The district court granted the motion and Halo appealed.

On Halo's first appeal, we held that the motion should have been treated as a

motion for summary judgment under Rule 56 of the Federal Rules of Civil

Procedure, which required that Halo should have received "notice 'of the

consequences of failing to respond to [the] motion for summary judgment.'" *Halo*

*v. Yale Health Plan* (Halo I), 546 F. App'x 2, 3 (2d Cir. 2013) (quoting *Vital v.*

*Interfaith Med. Ctr.*, 168 F.3d 615, 620 (2d Cir. 1999)). Because we concluded that

"Halo's apparent ignorance of her Rule 56 burden may have hampered her ability

to oppose Yale[ Health Plan's] summary judgment motion," we vacated the

judgment. *Id.* at 4.

    In vacating the judgment, we expressly declined to reach Halo's argument

that "civil penalties are available for violations of 29 C.F.R. § 2560.503-1" or "that,

in light of Yale[ Health Plan's] alleged violations of ERISA regulations, the court

should review Halo's ERISA claims *de novo*." *Id.* at 4–5. We instead left it to the

district court to address these issues in the first instance. *Id.* at 5.

    On remand, and after Yale Health Plan again moved for summary

judgment, the district court concluded that "the plan clearly reserves discretion

for the plan administrator" and that, "[o]nce it is clear that the administrator has

discretionary authority, the standard of review ordinarily shifts from *de novo* to an

arbitrary and capricious standard of review." *Halo II*, 49 F. Supp. 3d at 255–56. The district court correctly recognized, however, that, "under certain circumstances, a plan administrator's failure to comply with the letter of the claims procedures outlined in ERISA requires courts to eschew the more deferential arbitrary and capricious review normally applied to an administrator's discretionary decisions in favor of a more searching *de novo* review." *Id.* at 256.

The district court nonetheless applied the so-called "substantial compliance doctrine," which excuses failures to comply with the Department's claims-procedure regulation if the record otherwise shows that the plan "substantially complied" with the regulation's requirements. As the district court explained, a plan substantially complies with the regulation "if the administrator made efforts to keep the beneficiary apprised of the claim assessment process and delivered reasonably timely and detailed decisions, which indicate that the administrator validly exercised its discretion." *Id.* at 256–57. Applying the substantial-compliance doctrine, the district court concluded that, "while YHP's communications of its claim denials were not ideal (and in some instances failed to comply with ERISA regulations), the substance and timing of its denials of

8

Halo's claims were sufficient to indicate that YHP had exercised its discretion, such that [the district court] review[ed] its denials of Halo's claims under an arbitrary and capricious standard." *Id.* at 257.

Despite the district court's conclusion that Yale Health Plan substantially complied with the Department of Labor's claims-procedure regulation and that it was therefore entitled to have Halo's claims reviewed under the more deferential arbitrary and capricious standard of review, the district court went on to hold that civil penalties are available to a claimant if a plan fails to (substantially) comply with the regulation. *Id.* at 268–76.

## Standard of Review

"We review a district court's decision to grant summary judgment *de novo*, construing the evidence in the light most favorable to the party against which summary judgment was granted and drawing all reasonable inferences in its favor." *Sec. Plans, Inc. v. CUNA Mut. Ins. Soc'y*, 769 F.3d 807, 815 (2d Cir. 2014) (quoting *Wachovia Bank, N.A. v. VCG Special Opportunities Master Fund, Ltd.*, 661 F.3d 164, 171 (2d Cir. 2011)).

## Background

Congress enacted ERISA "to promote the interests of employees and their beneficiaries in employee benefit plans, and to protect contractually defined benefits." *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 113 (1989) (citations and quotation marks omitted). A key component of ERISA's statutory plan is Section 503, which requires that, "[i]n accordance with regulations of the [Department of Labor], every employee benefit plan shall" do two things: First, "provide adequate notice in writing to any participant or beneficiary whose claim for benefits under the plan has been denied, setting forth the specific reasons for such denial, written in a manner calculated to be understood by the participant"; and second, "afford a reasonable opportunity to any participant whose claim for benefits has been denied for a full and fair review by the appropriate named fiduciary of the decision denying the claim." 29 U.S.C. § 1133.[1]

The Department of Labor first issued a regulation governing claims procedures for employee benefit plans under its ERISA Section 503 authority in May 1977. *See* Claims Procedures for Employee Benefit Plans, 42 Fed. Reg. 27,426

---

[1] "The Secretary of Labor's rulemaking power is contained in [ERISA] § 505." *Mass. Mut. Life Ins. Co. v. Russell*, 473 U.S. 134, 143 n.11 (1985) (citing 29 U.S.C. § 1135).

(May 27, 1977) (codified at 29 C.F.R. § 2560.503-1). Two decades later, the Department issued a request for information from the public concerning the advisability of amending the regulation, noting that, in the years since the Department had issued the regulation, "dramatic changes in health care delivery [had] raised many issues concerning access, coverage, and quality of care." Claims Procedures for Employee Benefit Plans, 62 Fed. Reg. 47,262, 47,262 (Sept. 8, 1997).

As the Department explained in its request for information, "[o]ne of the most important changes [since 1977 was] the growth of managed health care delivery systems," which "adopt various measures to control costs and increase efficiency," including "impos[ing] limits or conditions on an individual's choice of physicians and often requir[ing] prior approval before an individual can obtain, or obtain reimbursement for, hospital care or medical services provided by a specialist." *Id.* at 47,262. In light of these changes, "[t]he Department [sought] comments concerning the nature of existing benefit determination and review practices of plans and whether the Department's [then existing] regulation [was] adequate to protect the interests of both pension and welfare benefit plan

11

participants and beneficiaries." *Id.* at 47,264. Among other things, the Department asked whether it should "adopt minimum standards for filing claims and new minimum standards for requesting review." *Id.*

In September 1998, and in response to the comments it received, the Department issued for public comment a "proposed regulation revising the minimum requirements for benefit claims procedures of employee benefit plans covered by Title I of [ERISA]." ERISA Rules and Regulations for Administration and Enforcement; Claims Procedures, 63 Fed. Reg. 48,390, 48,390 (Sept. 9, 1998). The Department explained that its "review of the comments received in response to the [request for information had] led [it] to conclude that the procedural standards set in the current regulation [were] no longer adequate to protect participants and beneficiaries of employee benefit plans." *Id.* at 48,390–91. This inadequacy stemmed partly from the fact that the 1977 "regulation [had been] adopted at a time when access to health services was controlled principally by the independent judgments of physicians and other healthcare professionals," but, "[s]ince that time, the growth of managed care delivery systems ha[d] largely transformed the relationship between patient and health care provider." *Id.* at

12

48,391 (footnote omitted). Among other things, the growth of "managed care delivery system[s] . . . heighten[ed] concern about the fair and expeditious resolution of benefit disputes." *Id.* Accordingly, the Department decided to replace the 1977 regulation in its entirety. *Id.* at 48,392.

In a section of the proposed regulation's supplementary information entitled "Consequences of Failure to Establish and Follow Reasonable Claims Procedures," the Department noted that "[m]any of the comments that the Department [had] received in response to the [request for information] asserted that plans often fail to follow the minimum standards for procedural fairness set by the [1977] regulation," and that "[t]he Department believe[d] it [was] important to make clear that the claims procedure regulation prescribes the minimum standards for an administrative claims review process consistent with ERISA." *Id.* at 48,397. The Department further explained that "claimants should not be required to continue to pursue claims through an administrative process that fails to meet the minimum standards of the regulation." *Id.*

The Department therefore proposed adding a new subsection providing that "a claimant who attempts to pursue a claim is deemed to have exhausted the

administrative remedies available to him or her if the plan fails to provide or to

abide by procedures that meet the regulatory minimum standards required under

the proposal." *Id.* Furthermore, the Department was of the "view that, in such a

case, any decision that may have been made by the plan with respect to the claim

is not entitled to the deference that would be accorded to a decision based upon a

full and fair review that comports with the requirements of section 503 of the

Act." *Id.*

Following a notice-and-comment period, the Department issued its revised

claims-procedure regulation in November 2000. *See* ERISA Rules and Regulations

for Administration and Enforcement; Claims Procedures, 65 Fed. Reg. 70,246

(Nov. 21, 2000). The regulation's preamble, or statement of basis and purpose,

explains that "[t]he new standards are intended to ensure more timely benefit

determinations, to improve access to information on which a benefit

determination is made, and to assure that participants and beneficiaries will be

afforded a full and fair review of denied claims." *Id.* at 70,246. Taking into

consideration "the purely voluntary nature of the system through which these

vital benefits are delivered," the Department concluded "that the procedural

reforms contained in [the] regulation [were] necessary to guarantee procedural rights to benefit claimants." *Id*.

Among the many changes to the regulation, the most relevant for our purposes was the addition of subsection (*l*), addressing the consequences for the "[f]ailure to establish and follow reasonable claims procedures." 29 C.F.R. § 2560.503-1(*l*). That subsection provides:

> In the case of the failure of a plan to establish or follow claims procedures consistent with the requirements of this section, a claimant shall be deemed to have exhausted the administrative remedies available under the plan and shall be entitled to pursue any available remedies under section 502(a) of the Act on the basis that the plan has failed to provide a reasonable claims procedure that would yield a decision on the merits of the claim.

*Id*.[2] The Department explained in the regulation's preamble that its "intentions in including this provision in the proposal were to clarify that the procedural

---

[2] Although there is a distinction to be drawn between the plan and its administrator for some purposes, *see, e.g.*, *Krauss v. Oxford Health Plans, Inc.*, 517 F.3d 614, 631 (2d Cir. 2008), we use the terms interchangeably in this discussion. The quoted language here suggests that subsection (*l*) applies to both the plan and its administrator, if a separate entity, as it requires the plan to establish and *follow* reasonable claims procedures. Indeed, it is unclear how it could be otherwise as subsection (*l*) would be a dead letter if it did not apply to both the plan and the entity implementing it. Notably, Yale Health Plan itself draws no distinction between the plan and its administrator for purposes of applying subsection (*l*). *See* Appellee's Br. at 18, 30–32.

minimums of the regulation are essential to procedural fairness and that a

decision made in the absence of the mandated procedural protections should not

be entitled to any judicial deference." 65 Fed. Reg. at 70,255. The Department

further noted in the preamble that

> [m]any commenters representing employers and plans argued that
> this provision would impose unnecessarily harsh consequences on
> plans that substantially fulfill the requirements of the regulation, but
> fall short in minor respects. These commenters suggested that the
> Department adopt instead a standard of good faith compliance as
> the measure for requiring administrative exhaustion. Alternatively,
> they suggested that the Department recognize the judicial doctrine
> under which exhaustion is required unless the administrative
> processes impose actual harm on the claimant.

*Id.* at 70,255–56. Rejecting these criticisms and suggestions, the Department

decided to retain the proposed provision in its entirety, noting: "Inasmuch as the

regulation makes substantial revisions in the severity of the standards imposed

on plans, we believe that plans should be held to the articulated standards as

representing the minimum procedural regularity that warrants imposing an

exhaustion requirement on claimants." *Id.* at 70,256.[3]

### Discussion

Under ERISA Section 502(a)(1)(B), "[a] civil action may be brought . . . by a

participant or beneficiary . . . to recover benefits due to him under the terms of his

plan, to enforce his rights under the terms of the plan, or to clarify his rights to

future benefits under the terms of the plan." 29 U.S.C. § 1132(a)(1)(B). The issues

we address today concern some of the consequences that follow from a plan's

failure to comply with the Department's claims-procedure regulation when a

participant or beneficiary brings a civil action under ERISA Section 502(a)(1)(B).

---

[3] The regulation issued in 2000 governs this appeal, but it is worth noting that some or all of our analysis may be affected by changes to claims procedures resulting from the Patient Protection and Affordable Care Act, Pub. L. No. 111-148, 124 Stat. 119 (2010), as amended by the Health Care and Education Reconciliation Act, Pub. L. No. 111-152, 124 Stat. 1029 (2010) (collectively, the "ACA"). In November 2015, the Departments of Labor, Treasury, and Health and Human Services, acting under authority granted by the ACA, issued a new regulation governing internal claims, appeals, and external review processes for certain employee benefit plans. *See* 29 C.F.R. § 2590.715-2719; *see generally* Final Rules for Grandfathered Plans, Preexisting Condition Exclusions, Lifetime and Annual Limits, Rescissions, Dependent Coverage, Appeals, and Patient Protections Under the Affordable Care Act, 80 Fed. Reg. 72,192 (Nov. 18, 2015). The new regulation does not apply to "grandfathered" health plans that were in effect before the ACA's enactment and that have not significantly altered their terms of coverage or benefits since then. *See* 80 Fed. Reg. at 72,192–94; *see also* 29 C.F.R. § 2590.715-1251.

17

## I.  The Standard of Review Applied to Claims under ERISA Section 502(a)(1)(B)

We begin with the standard of review that courts should apply to a claim under ERISA Section 502(a)(1)(B) when a plan fails to comply with the Department of Labor's claims-procedure regulation. As discussed above, the Department's regulation imposes minimum requirements for benefit claims procedures, and the Department's preamble clarifies that, when a plan fails to comply with those minimum requirements, the plan's decision denying a claim should not be entitled to deference in court. *See* 65 Fed. Reg. at 70,255. For the reasons that follow, we agree.

"Although it is a comprehensive and reticulated statute, ERISA does not set out the appropriate standard of review for actions under § 1132(a)(1)(B) challenging benefit eligibility determinations." *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 108–09 (1989) (citation and quotation marks omitted). Nonetheless, the Supreme Court has observed that "ERISA abounds with the language and terminology of trust law," and, therefore, "[i]n determining the appropriate standard of review for actions under § 1132(a)(1)(B), [courts] are guided by principles of trust law." *Id.* at 110–11; *see also Metro. Life Ins. Co. v. Glenn*, 554 U.S.

105, 110–11 (2008). Applying such trust law principles, the *Firestone* Court held

that "a denial of benefits challenged under § 1132(a)(1)(B) is to be reviewed under

a *de novo* standard unless the benefit plan gives the administrator or fiduciary

discretionary authority to determine eligibility for benefits or to construe the

terms of the plan," in which case an arbitrary and capricious standard applies.

*Firestone*, 489 U.S. at 115. The district court concluded that Yale Health Plan gives

its claims administrator discretionary authority to determine eligibility for

benefits. *Halo v. Yale Health Plan* (Halo II), 49 F. Supp. 3d 240, 256 (D. Conn. 2014).

Trust law principles would therefore normally dictate that a federal court review

such eligibility determinations under the highly deferential arbitrary and

capricious standard.

But the Supreme Court has also recognized that "trust law does not tell the

entire story. After all, ERISA's standards and procedural protections partly reflect

a congressional determination that the common law of trusts did not offer

completely satisfactory protection." *Varity Corp. v. Howe*, 516 U.S. 489, 497 (1996).

Accordingly, "[a]lthough trust law may offer a 'starting point' for analysis in

some situations, it must give way if it is inconsistent with the 'language of the

statute, its structure, or its purposes.'" *Hughes Aircraft Co. v. Jacobson*, 525 U.S. 432, 447 (1999) (quoting *Varity*, 516 U.S. at 497). In approaching this question,

> courts may have to take account of competing congressional purposes, such as Congress' desire to offer employees enhanced protection for their benefits, on the one hand, and, on the other, its desire not to create a system that is so complex that administrative costs, or litigation expenses, unduly discourage employers from offering welfare benefit plans in the first place.

*Varity*, 516 U.S. at 497.

Moreover, "[n]ot only is there no ERISA provision directly providing a lenient standard for judicial review of benefit denials, but there is no requirement necessarily entailing such an effect even indirectly." *Rush Prudential HMO, Inc. v. Moran*, 536 U.S. 355, 385 (2002). Rather, the "general or default rule [is] *de novo* review." *Id.*

Bearing these principles in mind, we turn first to trust law and then to regulatory and statutory purpose to determine the appropriate standard of review to apply when a plan fails to comply with the Department of Labor's claims-procedure regulation.

### A. Trust Law Principles

Applying a *de novo* standard of review to claim denials that fail to comply with the minimum regulatory requirements comports with trust law. The *Firestone* Court accorded deference to an administrator's discretionary determinations based on the well-established trust law principle that, "[w]hen a trustee has discretion with respect to the exercise of a power, its exercise is subject to supervision by a court only to prevent abuse of discretion." 3 Restatement (Third) of Trusts § 87 (Am. Law Inst. 2007); *see also Firestone*, 489 U.S. at 111 (citing Restatement (Second) of Trusts § 187 (Am. Law Inst. 1959) for the same principle). Equally well-established, however, is the principle that "a court may properly interpose if it finds that the trustee's conduct, in exercising a discretionary power, fails to satisfy the applicable standard of care, skill, and caution." Restatement (Third) of Trusts, § 87 cmt. c. Under ERISA, the Department of Labor's claims-procedure regulation provides the applicable standard of care, skill, and caution that plans must follow when exercising their discretion. Under trust law principles, then, courts may "interpose"—i.e., review a claim *de novo*—if they fail to do so.

## B. Regulatory and Statutory Purpose

Regardless of whether trust law would accord deference to an otherwise discretionary decision that failed to comply with the Department's claims-procedure regulation, we must consider whether such deference conflicts with the "language of the statute, its structure, or its purpose," bearing in mind "competing congressional purposes." *Varity*, 516 U.S. at 497. Foremost among our considerations is that Congress entrusted the Department of Labor, not the courts, to issue a claims-procedure regulation that appropriately addresses ERISA's competing purposes. Our duty today, then, is to interpret that regulation, a task that requires us to examine the regulation's text in light of its purpose, as stated in the regulation's preamble, *see generally* Kevin M. Stack, *Interpreting Regulations*, 111 Mich. L. Rev. 355 (2012), as well as the purpose of the regulation's authorizing statute, ERISA, *see Varity*, 516 U.S. at 497.

### 1. The Regulation and Its Preamble

When issuing regulations, the Administrative Procedure Act requires agencies to "incorporate in the rules adopted a concise general statement of their basis and purpose," 5 U.S.C. § 553(c), a statement that is commonly known as the

regulation's preamble. Based on this congressional command, "it does not make sense to interpret the text of a regulation independently from its" preamble. Stack, *supra*, at 361; *see also Fid. Fed. Sav. & Loan Ass'n v. de la Cuesta*, 458 U.S. 141, 158 n.13 (1982) ("[W]e look to the preamble . . . for the administrative construction of the regulation, to which 'deference is . . . clearly in order.'"(quoting *Udall v. Tallman*, 380 U.S. 1, 16 (1965))); *Wyo. Outdoor Council v. U.S. Forest Serv.*, 165 F.3d 43, 53 (D.C. Cir. 1999) ("While language in the preamble of a regulation is not controlling over the regulation itself, we have often recognized that the preamble to a regulation is evidence of an agency's contemporaneous understanding of its proposed rules." (citation omitted)). Accordingly, we begin with the regulation's text and its preamble.

As noted above, in 2000, the Department added to the regulation a subsection addressing the consequences for "[f]ail[ing] to establish and follow reasonable claims procedures," which provides:

> In the case of the failure of a plan to establish or follow claims procedures consistent with the requirements of this section, a claimant shall be deemed to have exhausted the administrative remedies available under the plan and shall be entitled to pursue any available remedies under section 502(a) of the Act on the basis

> that the plan has failed to provide a reasonable claims procedure
> that would yield a decision on the merits of the claim.

29 C.F.R. § 2560.503-1(*l*). The preamble to the regulation explains that the

"Department's intentions in including this provision in the proposal were to

clarify that the procedural minimums of the regulation are essential to procedural

fairness and that a decision made in the absence of the mandated procedural

protections *should not be entitled to any judicial deference.*" 65 Fed. Reg. at 70,255

(emphasis added). In other words, a plan's failure to establish or follow the

claims-procedure regulation entitles the claimant to have his or her claim

reviewed *de novo* in federal court.

　　We conclude that the Department's interpretation of its own regulation as

contained in the regulation's preamble is entitled to substantial deference based

on the regulation's ambiguity and the timing, formality, and history of the

preamble's interpretation.

### a. The Regulation's Ambiguity

　　In *Auer v. Robbins*, the Supreme Court held that a Department's

interpretation of its own regulation is "controlling unless 'plainly erroneous or

inconsistent with the regulation.'" 519 U.S. 452, 461 (1997) (quoting *Robertson v.*

24

*Methow Valley Citizens Council*, 490 U.S. 332, 359 (1989)). But in *Christensen v. Harris County*, the Supreme Court clarified that "*Auer* deference is warranted only when the language of the regulation is ambiguous." 529 U.S. 576, 588 (2000).

Subsection (*l*) of the regulation admittedly says nothing about standards of review. Some district courts have read the absence of any reference to the standard of review in subsection (*l*) as unambiguously indicating that the arbitrary and capricious standard of review continues to apply to discretionary decisions even if the plan fails to follow the Department's claims-procedure regulation; based on this purported lack of ambiguity, these courts have declined to accord any deference to the regulation's preamble. *See, e.g., Kohut v. Hartford Life & Accident Ins. Co.*, 710 F. Supp. 2d 1139, 1144–45 (D. Colo. 2008); *Goldman v. Hartford Life & Accident Ins. Co.*, 417 F. Supp. 2d 788, 804 (E.D. La. 2006). These decisions, however, ignore the legal context in which the Department issued its regulation.

In *Firestone*, the Supreme Court held that courts should defer to an administrator's discretionary decision, but this holding is premised on there being a decision to which a court may defer. Interpreting *Firestone*, many courts

25

applying the 1977 regulation concluded that deference is not warranted if the plan

failed to make a decision in the first place. *See, e.g., Nichols v. Prudential Ins. Co. of

Am.*, 406 F.3d 98, 107 (2d Cir. 2005) ("[W]e may give deferential review only to

actual exercises of discretion."); *Gilbertson v. Allied Signal, Inc.*, 328 F.3d 625, 632

(10th Cir. 2003) ("Deference to the administrator's expertise is inapplicable where

the administrator has failed to apply his expertise to a particular decision.");

*Gritzer v. CBS, Inc.*, 275 F.3d 291, 296 (3d Cir. 2002) ("Where a trustee fails to act or

to exercise his or her discretion, de novo review is appropriate because the trustee

has forfeited the privilege to apply his or her discretion; it is the trustee's analysis,

not his or her right to use discretion or a mere arbitrary denial, to which a court

should defer." (citing *Moench v. Robertson*, 62 F.3d 553, 567 (3d Cir. 1995))); *see also

Jebian v. Hewlett-Packard Co. Emp. Benefits Org. Income Prot. Plan*, 349 F.3d 1098,

1104 (9th Cir. 2003) ("Decisions made outside the boundaries of conferred

discretion are not exercises of discretion, the substance of the decisions

notwithstanding."). For example, "[w]e previously concluded, based on [the 1977

regulation], that failure to respond to a plan participant's claim within the time-

frame established by the Department of Labor's regulations rendered the claim

26

'deemed denied' and the participant's subsequent ERISA challenge to the benefits determination subject to *de novo* review." *Krauss v. Oxford Health Plans, Inc.*, 517 F.3d 614, 624 (2d Cir. 2008) (citing *Nichols*, 406 F.3d at 105, 109).

Subsection (*l*) states that a plan's failure to establish or follow reasonable procedures in accordance with the claims-procedure regulation means that "a claimant shall be *deemed to have exhausted* the administrative remedies available under the plan *and shall be entitled to pursue any available remedies under section 502(a) of the Act* on the basis that the plan has failed to provide a reasonable claims procedure *that would yield a decision* on the merits of the claim." 29 C.F.R. § 2560.503-1(*l*) (emphasis added). This language could be reasonably read as incorporating the logic of *Firestone* and its progeny that a claim is subject to *de novo* review if it is "deemed denied," the effective equivalent of being deemed exhausted under the 2000 regulation, *cf. Eastman Kodak Co. v. STWB, Inc.*, 452 F.3d 215, 223 (2d Cir. 2006); *Torres v. Pittston Co.*, 346 F.3d 1324, 1132 n.10 (11th Cir. 2003). Based on this case law, subsection (*l*) is at least ambiguous with respect to the standard of review. And because the regulation is ambiguous, the Department's interpretation is "controlling unless 'plainly erroneous or

inconsistent with the regulation.'" *Auer*, 519 U.S. at 461 (quoting *Robertson*, 490

U.S. at 359). For the reasons discussed above (and below), we conclude that the

interpretation is fully consistent with the regulation.

### b. The Timing, Formality, and History of the Department's Interpretation

The timing, formality, and history of the department's interpretation

further indicate that the Department's interpretation as contained in the

regulation's preamble is entitled to substantial deference. The preamble issued

contemporaneously with the regulation and thus demonstrates "the Secretary's

intent at the time of the regulation's promulgation." *Gardebring v. Jenkins*, 485 U.S.

415, 430 (1988). In addition, the preamble issued as part of a formal notice-and-

comment rulemaking, formality that generally entitles an agency's interpretation

to greater deference. *See, e.g.*, *Christensen*, 529 U.S. at 587 ("Here, however, we

confront an interpretation contained in an opinion letter, not one arrived at after,

for example, a formal adjudication or notice-and-comment rulemaking.").

Moreover, the preamble's explanation of the regulation is consistent with

the regulation's history. As noted, the Department completely overhauled its

regulation two decades after it was first issued because of "dramatic changes in

health care delivery [that] raised many issues concerning access, coverage, and quality of care." 62 Fed. Reg. at 47,262. In response to comments that plans often failed to follow the then-current regulation, "[t]he Department believe[d] it [was] important to make clear that the claims procedure regulation prescribes the minimum standards for an administrative claims review process consistent with ERISA." 63 Fed. Reg. at 48,397. To further that intent, the Department proposed and ultimately implemented subsection (*l*), the stated purpose of which was to make clear that that a decision made by a plan that did not establish or follow the regulation's minimum requirements "is not entitled to the deference that would be accorded to a decision based upon a full and fair review that comports with the requirements of section 503 of the Act." *Id.* Thus, the preamble's explanation of subsection (*l*) is consistent with the regulation's history and purpose.

In sum, then, the Department's interpretation of its own regulation as contained in the regulation's preamble is entitled to substantial deference in light of the regulation's ambiguity as well as the timing (the preamble was issued contemporaneously with the regulation), formality (the preamble was issued as

part of a formal rule-making process), and history (the preamble's interpretation is consistent with the reason for revising the regulation) of the preamble.

## 2. Statutory Purpose

Having examined the regulation's text and preamble, we next address how the Department's interpretation of its regulation accords with the purpose of the authorizing statute or, more accurately, ERISA's *dual* purposes of encouraging employers to continue voluntarily providing benefits while also protecting employees' interests in those benefits. *See, e.g.*, *Fifth Third Bancorp v. Dudenhoeffer*, 134 S. Ct. 2459, 2470 (2014) ("[W]e have recognized that 'ERISA represents a careful balancing between ensuring fair and prompt enforcement of rights under a plan and the encouragement and creation of such plans.'" (quotation marks omitted) (quoting *Conkright v. Frommert*, 559 U.S. 506, 517 (2010))).

A key consideration in this discussion is the judicially created exhaustion requirement, which mandates claimants to pursue their claims through their plan's claims procedure before filing an ERISA Section 502(a)(1)(B) suit in federal court. Although neither ERISA nor the 1977 regulation contained an exhaustion requirement, *see, e.g.*, *Amato v. Bernard*, 618 F.2d 559, 566–67 (9th Cir. 1980); 42 Fed.

Reg. at 27,428, by the 1990s, this Circuit and others had "recognized 'the firmly

established federal policy favoring exhaustion of administrative remedies in

ERISA cases,'" *Kennedy v. Empire Blue Cross & Blue Shield*, 989 F.2d 588, 594 (2d

Cir. 1993) (quoting *Alfarone v. Bernie Wolff Constr.*, 788 F.2d 76, 79 (2d Cir. 1986)).

Among other things, administrative exhaustion is a "safeguard[ that]

encourage[s] employers and others to undertake the voluntary step of providing

medical and retirement benefits to plan participants." *LaRue v. DeWolff, Boberg &

Assocs.*, 552 U.S. 248, 259 (2008) (Roberts, C.J., concurring).

But we have also explained that there is a balance to be struck between

encouraging employers and protecting employees: "ERISA requires *both* that

employee benefit plans have reasonable claims procedures in place, and that plan

participants avail themselves of these procedures before turning to litigation."

*Eastman Kodak*, 452 F.3d at 219 (emphasis added). As the Department explained in

the preamble to the 2000 regulation, "[i]nasmuch as the regulation makes

substantial revisions in the severity of the standards imposed on plans, we believe

that plans should be held to the articulated standards as representing the

minimum procedural regularity that warrants imposing an exhaustion requirement on claimants."65 Fed. Reg. at 70,256.

In other words, if plans comply with the regulation, which is designed to protect employees, the plans get the benefit of both an exhaustion requirement and a deferential standard of review when a claimant files suit in federal court— protections that will likely encourage employers to continue to voluntarily provide employee benefits. But if plans do not comply with the regulation, they are not entitled to these protections. That result is not unnecessarily harsh, as those in favor of the substantial compliance doctrine have contended. The failure to comply does not result in any oppressive consequence; plans will have to pay the claim only if it is a meritorious claim, which they are already contractually obligated to do. They will simply lose the benefit of the great deference afforded by the arbitrary and capricious standard. In short, this regulatory approach balances the competing interests of employers and employees and, accordingly, ERISA's dual congressional purposes.

### C. Inadvertent and Harmless Compliance Failures

Having concluded that a plan's otherwise discretionary denial of a claim that fails to comply with the Department of Labor's claims-procedure regulation is not entitled to deference, we must next determine whether a plan need only substantially comply with or must strictly adhere to the regulation to obtain the more deferential arbitrary and capricious standard of review.

Applying the 1977 regulation, a number of courts adopted the so-called "substantial compliance" doctrine based on the view that "depriving the administrator of his discretion for a minor procedural irregularity that did not substantively harm the claimant would reflect a hyper-proceduralism that is inconsistent with the flexibility and discretion contemplated by the Plan and ERISA regulations." *Gilbertson v. Allied Signal, Inc.*, 328 F.3d 625, 634 (10th Cir. 2003). Based on this reasoning, these courts held that, "in the context of an ongoing, good faith exchange of information between the administrator and the claimant, inconsequential violations of the deadlines or other procedural irregularities would not entitle the claimant to *de novo* review." *Id.* at 635.

Whatever the merits of applying the substantial compliance doctrine under the 1977 claims-procedure regulation, we conclude that the doctrine is flatly inconsistent with the 2000 regulation. The primary reason for this conclusion is that the Department of Labor considered and rejected the doctrine when it completely replaced the 1977 regulation. When the Department issued its proposed regulation, it specifically noted that subsection (*l*) was drafted in response to public comments that "plans often fail to follow the minimum standards for procedural fairness set by the current [i.e., 1977] regulation." 63 Fed. Reg. at 48,397. Accordingly, the Department proposed adding what later became subsection (*l*). *See* 63 Fed. Reg. at 48,397. As noted, in response to this proposal,

> [m]any commenters representing employers and plans argued that this provision would impose unnecessarily harsh consequences on plans that *substantially fulfill* the requirements of the regulation, but fall short in *minor* respects. These commenters suggested that the Department adopt instead a standard of good faith compliance as the measure for requiring administrative exhaustion. Alternatively, they suggested that the Department recognize the judicial doctrine under which exhaustion is required unless the administrative processes impose actual harm on the claimant.

65 Fed. Reg. at 70,255–56 (emphasis added). The Department rejected these

suggestions and decided to retain the proposed subsection without modification.

*See id.* at 70,256.

The Department reached this conclusion after a three-year rulemaking

process that began with a request for information from the public, followed by a

notice-and-comment period in which the Department twice assessed the costs and

benefits of the proposed regulation. *See* 63 Fed. Reg. at 48,398–405; 65 Fed. Reg. at

70,256–65. Courts, which lack the resources and expertise to conduct a similar

cost-benefit analysis, should be reluctant to disturb the regulatory scheme the

Department has devised under authority expressly granted to it by Congress.

Accordingly, we reject the substantial compliance doctrine because it is

inconsistent with the Department's regulation.

That being said, the Department is advising plans that certain inadvertent

and harmless deviations will not trigger *de novo* review. Specifically, the

Department's online Frequently Asked Questions page states:

> A plan that establishes procedures in full conformity with the
> regulation might, in processing a particular claim, inadvertently
> deviate from its procedures. If the plan's procedures provide an
> opportunity to effectively remedy the inadvertent deviation without

prejudice to the claimant, through the internal appeal process or otherwise, then there ordinarily will not have been a failure to establish or follow reasonable procedures as contemplated by § 2560.503-1(*l*).

Dep't of Labor, FAQs About The Benefit Claims Procedure Regulation,

http://www.dol.gov/ebsa/faqs/faq_claims_proc_reg.html; *see also* Brief for Sec'y of

Labor as Amicus Curiae Supporting Pl. at 11 n.1, *Halo v. Yale Health Plan*, No. 12-

1447 (2d Cir. Jan. 28, 2013).

If the Department is advising benefit plans that it will tolerate inadvertent

and harmless deviations in the processing of a particular claim, so long as the

plan otherwise establishes procedures in full conformity with the regulation, we

see no reason why courts should not also tolerate such minor deviations. Indeed,

one can well imagine human error causing, for example, a plan to respond in 73

hours when the regulation requires that it do so in 72, *see* 29 C.F.R. § 2560.503-

1(f)(2)(i) (requiring that plan notify the claimant of its benefit determination

within 72 hours after receiving a claim for urgent care), or in 16 days when the

regulation specifies 15, *see* 29 C.F.R. § 2560.503-1(f)(2)(iii)(A) (requiring that plan

notify the claimant of its benefit determination for a pre-service claim not later

than 15 days after the plan's receipt of the claim), and that such slight delays might not harm the claimant.

To prevent the exception from swallowing the rule, however, such deviations should not be tolerated lightly. Accordingly, we hold that, when denying a claim for benefits, a plan's failure to comply with the Department of Labor's claims-procedure regulation, 29 C.F.R. § 2560.503-1, will result in that claim being reviewed *de novo* in federal court, unless the plan has otherwise established procedures in full conformity with the regulation and can show that its failure to comply with the claims-procedure regulation in the processing of a particular claim was inadvertent *and* harmless. Moreover, the plan "bears the burden of proof on this issue since the party claiming deferential review should prove the predicate that justifies it." *Sharkey v. Ultramar Energy Ltd.*, 70 F.3d 226, 230 (2d Cir. 1995); *see also Nichols*, 406 F.3d at 108 (noting the "administrator had the burden of proving discretion").

## II.    Civil Penalties

We now turn to the district court's holding that a plan's failure to comply with the claims-procedure regulation entitles the claimant to unspecified civil

penalties.[4] Because this holding finds no support in the regulation or statute, and because it alters the Department of Labor's regulatory framework, we disagree.

First, the regulation does not contain a civil penalties provision. As discussed extensively above, the regulation does contain a remedial provision, 29 C.F.R. § 2560.503-1(*l*), which addresses a plan's "[f]ailure to establish and follow reasonable claims procedures." The absence of a civil penalties provision coupled with an express remedial provision suggests that the Department intended the express remedy to be exclusive. *Cf. Nat'l R.R. Passenger Corp. v. Nat'l Ass'n of R.R. Passengers*, 414 U.S. 453, 458 (1974) ("A frequently stated principle of statutory construction is that when legislation expressly provides a particular remedy or remedies, courts should not expand the coverage of the statute to subsume other remedies.").

Second, ERISA itself contains a number of detailed civil penalties provisions, none of which entitles a participant or beneficiary to civil penalties for

---

[4] We understand the district court to have used the term "civil penalty" in its usual sense as a "[f]ine assessed for a violation of a statute or regulation" as "distinguished from compensation for the injured party's loss." Black's Law Dictionary 1313 (10th ed. 2014). In the context of ERISA benefit plans, "compensation for the injured party's loss" takes the form of payment of the claim the plan is obligated to provide.

violations of the Department's claims-procedure regulation. *See, e.g.*, 29 U.S.C.

§ 1132(c), (i), (*l*), (m). Drawing on this statutory silence, the Third and Seventh

Circuits have held that ERISA's statutory penalties are not available for violations

of the Department's regulations implementing ERISA Section 503, "[n]oting that

Congress will be understood to have authorized agencies to decide what conduct

will be penalized only if the legislature has expressly granted that power."

*Wilczynski v. Lumbermens Mut. Cas. Co.*, 93 F.3d 397, 406 (7th Cir. 1996); *Groves v.*

*Modified Ret. Plan for Hourly Paid Emps. of Johns Manville Corp. & Subsidiaries*, 803

F.2d 109, 116 (3d Cir. 1986).

     For example, ERISA provides that the "Secretary may assess a civil penalty

against any person of up to $1,000 a day from the date of the person's failure or

refusal to file the information required to be filed by such person with the

Secretary *under regulations prescribed* pursuant to section 101(g)[, 29 U.S.C.

§ 1021(g)]." 29 U.S.C. § 1132(c)(5) (emphasis added). There is no comparable

statutory authority for civil penalties for violations of the Department's

regulations prescribed pursuant to ERISA Section 503. And although ERISA

Section 502(a)(1)(A) allows participants or beneficiaries to bring a civil action "for

the relief provided for in subsection (c) of [that] section," *id.* § 1132(a)(1)(A), which

contains a number of detailed civil penalties provisions, civil penalties for

violations of the Department's claims-procedure regulation is not one of them.

Third, the district court premised much of its civil penalties holding on the

theory that nothing short of civil penalties could ensure compliance with the

Department's regulation. *Halo II*, 49 F. Supp. 3d at 272–74. But "[t]he federal

judiciary will not engraft a remedy on a statute, no matter how salutary, that

Congress did not intend to provide." *Mass. Mut. Life Ins. Co. v. Russell*, 473 U.S.

134, 145 (1985) (quoting *California v. Sierra Club*, 451 U.S. 287, 297 (1981)).

The Supreme Court has been particularly reluctant to recognize such non-

statutory remedies in the ERISA context, noting that "because ERISA is a

comprehensive reticulated statute, and is enormously complex and detailed, it

should not be supplemented by extratextual remedies." *Hughes Aircraft Co. v.

Jacobson*, 525 U.S. 432, 447 (1999) (citations and quotation marks omitted). For

example, in *Russell*, the Supreme Court rejected the argument that ERISA Section

502(a)(2), 29 U.S.C. § 1132(a)(2), which allows a participant or beneficiary to

pursue a claim for breach of fiduciary duty under ERISA Section 409(a), 29 U.S.C.

§ 1109(a), permits a claimant to obtain extra-contractual damages from a plan fiduciary based on failure to comply with the Department's 1977 claims-procedure regulation. In rejecting this argument, the Supreme Court observed that

> [n]othing in the [1977] regulations or in the statute . . . expressly provides for a recovery from either the plan itself or from its administrators if greater time is required to determine the merits of an application for benefits. Rather, the regulations merely state that a claim may be treated as having been denied after the 60- or 120-day period has elapsed. This provision therefore enables a claimant to bring a civil action to have the merits of his application determined, just as he may bring an action to challenge an outright denial of benefits.

*Russell*, 473 U.S. at 144 (citation omitted). This observation is equally applicable to a claim brought under ERISA Section 502(a)(1)(B) alleging violations of the Department's 2000 regulation, which also does not expressly provide for a recovery from the plan if the claim denial is untimely or inadequate under the regulation.

Fourth, the Department of Labor is in a far better position than a court to determine the appropriate incentives necessary to ensure compliance with its own regulation. As noted, the Department engaged in a three-year rulemaking

process, during which commenters objected to the remedial provision of

subsection (*l*) as "unnecessarily harsh." 65 Fed. Reg. at 70,255. The Department

disagreed, noting, among other things, "that it is unlikely that this provision, in

and of itself, will result in an increase in benefit claims litigation. Given the

limited remedies available in a suit under section 502(a) of the Act, claimants will

have little incentive to invoke this provision unless they believe they will be

unable to receive a fair consideration from the plan." *Id.* at 70,256. The conclusion

that claimants will have little incentive to invoke subsection (*l*) may not hold true

if, in addition to a full and fair review, claimants could also obtain civil penalties

for violations of the claims-procedure regulation.

Relatedly, we note that the standard of review and civil penalty questions

are closely intertwined: The Department's regulation is exacting, but the penalty

for deviation is relatively modest—the plan will have to pay only those claims

that are in fact covered. The district court turned this framework on its head,

weakening the Department's procedural requirements while increasing the

penalties for noncompliance. Weighing ERISA's competing purposes, the

Department set forth what it considered to be minimum requirements for claims

procedures. If these requirements are followed, plans are entitled to the

exhaustion requirement's protection, which also bestows a highly deferential

standard of review on the plan's discretionary decisions. If they are not followed,

plans lose these protections. This carrot-and-stick approach reflects a careful

balancing that courts should be reluctant to disturb.

### III.        The Administrative Record

Finally, when reviewing claim denials, whether under the arbitrary and

capricious or *de novo* standards of review, district courts typically limit their

review to the administrative record before the plan at the time it denied the claim.

*See, e.g., DeFelice v. Am. Int'l Life Assurance Co.*, 112 F.3d 61, 66–67 (2d Cir. 1997). In

*DeFelice*, however, we noted that "the decision whether to admit additional

evidence is one which is discretionary with the district court, but which discretion

ought not to be exercised in the absence of good cause." *Id.* at 66. We further held

in *DeFelice* that "[a] demonstrated conflict of interest in the administrative

reviewing body is an example of 'good cause' warranting the introduction of

additional evidence." *Id.* at 67; *see also Paese v. Hartford Life & Accident Ins. Co.*, 449

F.3d 435, 441 (2d Cir. 2006) ("The district court, applying *DeFelice*, found that

good cause existed for the admission of the report because it was highly probative and written by a disinterested party who had actually examined Paese, and because Paese was not at fault for the report's initial absence from the record.").

We now expand on *DeFelice* to hold that good cause to admit additional evidence may exist if the plan's failure to comply with the claims-procedure regulation adversely affected the development of the administrative record. Entitling a claimant to *de novo* review based on a plan's failure to comply with the claims-procedure regulation may be cold comfort if the plan's own compliance failures produced an inadequate administrative record that would prevent a full and fair hearing on the merits. *Cf. Hobson v. Metro. Life Ins. Co.*, 574 F.3d 75, 87 (2d Cir. 2009) ("[T]he purpose of ERISA's notice requirement is to 'provide claimants with enough information to prepare adequately for further administrative review or an appeal to the federal courts.'" (quoting *Juliano v. Health Maint. Org. of N.J., Inc.*, 221 F.3d 279, 287 (2d Cir. 2000))). Accordingly, it is appropriate to allow the introduction of additional evidence if the plan's compliance failures adversely affected the development of the administrative record. Because the admission of such evidence based on good cause is a discretionary determination for the

44

district court, we leave it to the district court on remand to determine whether good cause exists here to admit additional evidence.

## Conclusion

In sum, we hold that, when denying a claim for benefits, a plan's failure to comply with the Department of Labor's claims-procedure regulation, 29 C.F.R. § 2560.503-1, will result in that claim being reviewed *de novo* in federal court, unless the plan has otherwise established procedures in full conformity with the regulation and can show that its failure to comply with the claims-procedure regulation in the processing of a particular claim was inadvertent *and* harmless. A plan that makes such a showing is entitled to the more deferential arbitrary and capricious standard of review that would otherwise apply to its discretionary decisions. We further hold that a participant or beneficiary is not entitled to civil penalties for a plan's failure to comply with the claims-procedure regulation. Finally, we hold that a district court may exercise its discretion to consider a plan's failure to comply with the claims-procedure regulation as good cause warranting the introduction of additional evidence outside the administrative record.

We leave it to the district court to apply these standards to the facts of this case in the first instance. Accordingly, we VACATE the judgment of the district court and REMAND for further proceedings consistent with this opinion. We also suggest that, on remand, the district court consider appointing *pro bono* counsel for Halo. *See, e.g., Willey v. Kirkpatrick*, 801 F.3d 51, 71 (2d Cir. 2015).

**United States Court of Appeals for the Second Circuit**
**Thurgood Marshall U.S. Courthouse**
**40 Foley Square**
**New York, NY 10007**

**ROBERT A. KATZMANN**
CHIEF JUDGE

Date: April 12, 2016
Docket #: 14-4055cv
Short Title: Halo v. Yale Health Plan

**CATHERINE O'HAGAN WOLFE**
CLERK OF COURT

DC Docket #: 10-cv-1949
DC Court: CT (NEW HAVEN)
DC Judge: Bryant

## BILL OF COSTS INSTRUCTIONS

The requirements for filing a bill of costs are set forth in FRAP 39. A form for filing a bill of costs is on the Court's website.

The bill of costs must:
* be filed within 14 days after the entry of judgment;
* be verified;
* be served on all adversaries;
* not include charges for postage, delivery, service, overtime and the filers edits;
* identify the number of copies which comprise the printer's unit;
* include the printer's bills, which must state the minimum charge per printer's unit for a page, a cover, foot lines by the line, and an index and table of cases by the page;
* state only the number of necessary copies inserted in enclosed form;
* state actual costs at rates not higher than those generally charged for printing services in New York, New York; excessive charges are subject to reduction;
* be filed via CM/ECF or if counsel is exempted with the original and two copies.

**United States Court of Appeals for the Second Circuit**
**Thurgood Marshall U.S. Courthouse**
**40 Foley Square**
**New York, NY 10007**

**ROBERT A. KATZMANN**                                    **CATHERINE O'HAGAN WOLFE**
CHIEF JUDGE                                                        CLERK OF COURT

Date: April 12, 2016                                              DC Docket #: 10-cv-1949
Docket #: 14-4055cv                                           DC Court: CT (NEW HAVEN)
Short Title: Halo v. Yale Health Plan                      DC Judge: Bryant

## VERIFIED ITEMIZED BILL OF COSTS

Counsel for

_____

respectfully submits, pursuant to FRAP 39 (c) the within bill of costs and requests the Clerk to
prepare an itemized statement of costs taxed against the

_____

and in favor of

_____

for insertion in the mandate.

Docketing Fee        _____

Costs of printing appendix (necessary copies _____ )  _____

Costs of printing brief (necessary copies _____ ____) _____

Costs of printing reply brief (necessary copies _____ ) _____

**(VERIFICATION HERE)**

                                                              _____
                                                              Signature